IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CARLOS LINDSEY,

                          Plaintiff,

   v.                                                          OPINION & ORDER

LAVERN WALLACE,                                      16-cv-743-jdp

                        Defendant.

---

Pro se plaintiff Carlos Lindsey, a state prisoner incarcerated at the Wisconsin Secure Program Facility (WSPF), is proceeding on an Eighth Amendment deliberate indifference claim against defendant Laverne Wallace, a correctional sergeant at WSPF. Wallace was in the sergeant cage where he could monitor individual cells by intercom and video when Lindsey attempted suicide. Lindsey alleges that he told Wallace that he was suicidal and that he needed to see someone for psychological services, but Wallace taunted him and told him that he would not call anyone.

Both parties move for summary judgment. The parties agree that Lindsey told Wallace that he would swallow pills if Wallace would not get help for Lindsey, that Wallace responded, "Why? Because you're mad you didn't get your T.V.?," that Lindsey swallowed 19 pills of hydroxyzine, and that after the overdose a doctor at an off-site hospital diagnosed him with acute kidney failure. Because there is a genuine and material dispute about whether Wallace knew that Lindsey was suicidal and how promptly Wallace called for help, I will deny both parties' motions for summary judgment.

## PRELIMINARY MATTER

Lindsey moves to compel Wallace to produce a video recording of his cell. Dkt. 42. He states that the video recording would show that he pressed the intercom button installed in his cell multiple times and that it would have been impossible for Wallace to not see his suicide attempt through a camera from the sergeant cage at WSPF. *Id*. Wallace responded to Lindsey's motion to compel by stating that he already produced the video recordings. Dkt. 45.

Wallace's certificate of service accompanying his motion for summary judgment shows that he sent the video recording and other evidence to Lindsey at the Green Bay Correctional Institution, where he was incarcerated at the time. Dkt. 29-1. After Wallace moved for summary judgment, Lindsey was moved back to WSPF, where he had no personal property or legal documents for some time while Wallace's motion for summary judgment was pending. Dkt. 37.

Lindsey filed his motion to compel after filing his brief in opposition to Wallace's summary judgment motion. So it appears that Lindsey did not have the video recording of his cell during the briefing, which means that he was unable to rely on it in his summary judgment materials. But I have discretion to consider all materials in the record even if a party does not cite them. Fed. R. Civ. P. 56(c)(3).

I have considered the video recordings and conclude that Lindsey is right: the video recording of his cell supports his version of facts, as discussed below. I will deny Lindsey's motion to compel as moot.

## UNDISPUTED FACTS

The following facts are undisputed except where noted.

Lindsey is a WSPF inmate who has been diagnosed with several mental conditions, including depression, post-traumatic stress disorder, mood disorder, conduct disorder, antisocial personality, oppositional defiant disorder, and adjustment disorder. Dkt. 13, at 1–2 and Dkt. 16, ¶ 5. He has been prescribed various psychiatric medicine, including buspirone and escitalopram. Dkt. 34-1, at 13.

Lindsey also has a prescription for hydroxyzine, which is commonly prescribed as a sedative to treat anxiety and tension. Dkt. 33, ¶ 6. A hydroxyzine overdose is "rarely" toxic, but it could lead to lethargy that could in turn cause cardiac issues. *Id*.

Lindsey was on a Keep-On-Person (KOP) restriction, which meant that he could not have his medicine on his person or in his cell. Despite that restriction, Lindsey was able to hoard 19 of his hydroxyzine pills.

**A. September 13, 2016 incident**

On September 13, 2016, Wallace was in the sergeant cage where he could monitor individual cells by intercom and video. Lindsey spoke to Wallace through the intercom in his cell and asked to see a shift supervisor and someone from the psychological services unit (PSU). Lindsey told Wallace that he would swallow 19 pills if Wallace would not contact a shift supervisor or the PSU. Wallace responded, "Why? Because you're mad you didn't get your T.V.?" Lindsey then swallowed the 19 hydroxyzine pills. Dkt. 24-2 and Dkt. 28, ¶ 11. (Lindsey did not tell Wallace that the pills he had were hydroxyzine.) At some point, Wallace contacted Captain Larry Primmer and the PSU, and he told Lindsey that a supervisor and a PSU staff member would come to his cell after the "count," the administrative task of counting inmates in their cells. After the count, Primmer came to Lindsey's cell, followed by a PSU staff member,

3

Maria Lemieux, who came shortly after Primmer, and then two nurses, Beth Edge and Gunner Lee, came after Lemieux. Dkt. 35-1.

The critical dispute is what happened between 11:07 a.m., when Lindsey first used the intercom, and 11:16 a.m., when Primmer arrived at Lindsey's cell. The first dispute concerns what was said. Lindsey contends that he told Wallace that he was suicidal; Wallace denies that. Each presents his own declaration in support. Dkt. 24, ¶ 3 and Dkt. 35, ¶ 6. And Lindsey has some additional evidence to support his version. Lindsey sent Wallace a document titled "Interview/Information request" and asked Wallace, "Sgt. Wallace did I inform you on 9-13-16 that I was feeling suicidal and requested to be placed on clinical observation prior to me taking the pills?" Dkt. 41-1. Wallace responded, "You said you were suicidal and wanted to see PSU." *Id*. The parties also dispute what Wallace said in response to Lindsey's request. Lindsey states in his declaration that Wallace said, "I'm not calling anyone." Dkt. 24, ¶ 6. Wallace's declaration denies that he made the statement. Dkt. 35, ¶ 19. Both sides have evidence for their version, so what was said is genuinely disputed.

The next dispute concerns when Wallace notified Primmer and the PSU. Wallace's proposed findings of fact cite his declaration and state that Lindsey called Wallace at 11:07 a.m., and that after speaking to Lindsey, Wallace immediately informed Primmer and the PSU. Dkt. 44, ¶¶ 4, 6. But that is not what Wallace's declaration actually says. The declaration says Wallace received an intercom call from Lindsey *after* Lindsey swallowed the 19 pills:

> It is important to note that I notified the proper parties that Lindsey told me that he had pills he was going to take if a white shirt did not come see him. I did not notify them that I found Lindsey in an act of committing self-harm or suicide, which would have prompted more emergency attention, since that was not the case in this incident.
>
> . . .

4

> At no time did I observe Lindsey attempting to harm himself, nor did I see him take any pills.
>
> . . .
>
> *I only received one emergency call* from Lindsey on September 13, 2016 for the entire time I was stationed in the sergeant cage.
>
> . . .
>
> I would have likely observed Lindsey's camera at some point after he pressed his emergency call button, although I never observed him taking pills through the camera footage. Based on the camera footage, *it appears he took the pills and then pressed his emergency call button*, which could be the reason why I was not observing his camera before that. (*See* Ray Decl. Ex. 103.)

Dkt. 35, ¶¶ 14, 15, 18, 20 (emphasis added).

The cell video also suggests that Wallace did not notify Primmer and the PSU immediately, but that he did so only after he saw Lindsey swallow his pills. Although Wallace denies that he saw Lindsey swallow the pills, the video recording of Lindsey's cell shows Lindsey using the intercom multiple times during Wallace's shift, and the multiple uses of the intercom support the inference that Wallace was watching Lindsey. Lindsey pressed the intercom button for the first time at 11:07:45 a.m. and spoke into the intercom at 11:07:45 a.m. Dkt. 36 Ex. 103 (video recording); *see also* Dkt. 24-1 (investigation report). (The recording has no audio, so it doesn't show what Lindsey said.) Lindsey pressed the intercom button for the second time at 11:07:59 a.m. From 11:08:09 a.m. to 11:09:17 a.m., Lindsey stood in front of the camera and swallowed the 19 pills one-by-one. Lindsey then pressed the intercom button again for the third time at 11:09:39 a.m. and spoke into the intercom at 11:09:47. He pressed the intercom button for the fourth time at 11:10:10 a.m., and for the fifth time at 11:25:27 a.m. Wallace admits that he was the only sergeant in the sergeant cage where he could view Lindsey's cell through the camera. Dkt. 35, ¶¶ 8, 18, 20. A report placing Lindsey on observation status after

5

the September 13 incident states that a staff member was watching Lindsey. Dkt. 24-2. Again, both sides have evidence to support their version of when Wallace notified Primmer and the PSU, so the fact is genuinely disputed.

**B. Lindsey's physical injury**

Prison medical staff decided to send Lindsey to an emergency room at the Gundersen Boscobel Area Hospital and Clinics. A doctor at the hospital diagnosed Lindsey with acute renal failure, among other conditions. Dkt. 34-1, at 14. The doctor also recommended suicide precautions, noting that Lindsey had intentionally overdosed on hydroxyzine and that Lindsey had attempted to overdose on Risperidone pills a year before. *Id*. at 8. She also recommended that Lindsey stop taking hydroxyzine. *Id*. at 14.

ANALYSIS

Lindsey is proceeding on only one claim: that Wallace was deliberately indifferent to his suicide risk. Dkt. 6, at 4. Both sides move for summary judgment, raising the same issues. Dkt. 21 and Dkt. 29.

A correctional officer must take reasonable measures to ensure the safety of a suicidal inmate, and failure to do so can constitute deliberate indifference in violation of the Eighth Amendment. *See, e.g.*, *Sanville v. McCaughtry*, 266 F.3d 724, 733 (7th Cir. 2001). To prevail on a deliberate indifference claim in the context of a prisoner's self harm, the plaintiff must show "(1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006).

A district court must grant summary judgment when no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the parties cross-move for summary judgment, as they do here, the court "look[s] to the burden of proof that each party would bear on an issue of trial" and "require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997).

## A. Wallace's motion for summary judgment

I'll begin with Wallace's motion, and from this perspective I must construe the evidence and draw reasonable inferences in Lindsey's favor.

### 1. Objectively serious harm

Wallace contends that Lindsey suffered no objectively serious harm because "Lindsey's life was not in imminent danger from ingesting 19 hydroxyzine pills." Dkt. 30, at 8. This argument fails for two reasons.

First, actionable harm under the deliberate indifference standard need not inflict physical injury; psychological harm, extreme indignities, or "heightened risk of future injury" can all violate the Eighth Amendment.[1] A suicidal inmate need not succeed in his suicide attempt and have his estate assert his deliberate indifference claim; a suicide attempt qualifies

---

[1] *Mathews v. Raemisch*, 513 F. App'x 605, 607 (7th Cir. 2013) ("[T]he district court was wrong to suggest that the plaintiffs needed to show something beyond psychological harm."). *See also Hope v. Pelzer*, 536 U.S. at 738 ("[T]he 'basic concept underlying the Eighth Amendment . . . is nothing less than the dignity of man.'" (quoting *Trop v. Dulles*, 356 U.S. 86, 100 (1958)); *Wright v. Miller*, 561 Fed. App'x. 551, 555 (7th Cir. 2014) ("Even without an actual injury, the mere probability of the harm to which [an inmate is exposed] can be sufficient to create liability."); *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) ("[H]eightened risk of future injury from living in an infested jail is itself actionable.").

7

as objectively serious harm. *See Sanville*, 266 F.3d at 738 ("The Eighth Amendment does not allow officials to turn a blind eye to the activities of an inmate, particularly one who is suicidal.").

Second, the record supports the inference that Lindsey suffered serious physical harm. A doctor at the off-site hospital diagnosed Lindsey with "acute renal [kidney] failure," among other conditions. Dkt. 24-7, at 1, 3–5, 13–15. The doctor apparently based her opinion on her examination of Lindsey and a lab test. *Id*. at 13–14. Wallace disagrees with the doctor's opinion, relying on a declaration of Holzmacher, a medical director for the Department of Corrections, Dkt. 33. Holzmacher states that the off-site doctor erred in diagnosing Lindsey with acute renal failure because she failed to compare Lindsey's creatinine level as of the time she examined him with his creatinine level from an earlier time. *See id*. ¶¶ 14–15. The difference in the opinions of the two doctors raises a genuine dispute of fact. I cannot resolve the conflict in this evidence on summary judgment.

Wallace also contends that he did not know that 19 pills of hydroxyzine would pose an imminent danger of serious harm when Lindsey spoke to him, but this argument pertains to Wallace's state of mind, which I address in the next section.

## 2. Deliberate indifference

To show deliberate indifference, the plaintiff must show that "the defendant (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Collins*, 462 F.3d at 761. The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Novack ex rel. Turbin v. Cty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "If the

8

state officers can observe or are told that their detainee is indeed so disturbed that his next step is likely to be suicide, and yet they do nothing, it is fair to say that they have gone beyond mere negligence and entered the territory of the deliberately indifferent." *See Miller v. Harbaugh*, 698 F.3d 956, 963 (7th Cir. 2012).

Here, a reasonable jury could find that Wallace was deliberately indifferent to Lindsey's imminent risk of suicide. Lindsey presents evidence that Wallace subjectively knew that Lindsey was at substantial risk of committing suicide. Wallace admits that Lindsey said he would take 19 pills if Wallace would not call for help. Wallace states in his declaration:

> Between 11:00 a.m. - 11:15 a.m., I was working in the Sergeant's cage and answered an emergency call from the Plaintiff. The Plaintiff informed me that he had 19 pills and that he wanted to see a white shirt, and that he would take the pills if a white shirt did not come see him. The Plaintiff did not tell me that he was going to commit suicide, that he felt the need to commit self-harm, or that he wanted to be placed on observation status.

Dkt. 35, ¶ 6. Wallace denies that Lindsey said he was suicidal. But Lindsey's declaration says that he did. Dkt. 24, ¶ 3. And the "Interview/Information request" supports Lindsey's version that he told Wallace that he was suicidal. Dkt. 41-1. Lindsey also swallowed 19 pills one-by-one in front of the cell camera. Although Wallace denies that he saw Lindsey swallowing the pills, he admits that he was the sergeant cage between 11:00 a.m. to 11:15 a.m., that he was the only sergeant in the cage, and that he could view Lindsey's cell through the camera. Dkt. 35, ¶¶ 8, 18, 20. Maybe Wallace was just not paying attention, but the jury would not have to believe that. A reasonable jury could believe that Wallace spoke to Lindsey at 11:07:45 a.m. and knew right then that Lindsey was at risk of committing suicide, but did nothing until Lindsey actually tried to kill himself.

9

Wallace contends that he did not know that the pills that Lindsey had were hydroxyzine. The pills could have been vitamin C, iron, or some other benign pills, so he could not be deliberately indifferent because he did not know the pills posed any risk. But a correctional officer must conduct at least a minimal investigation when a prisoner informs him of imminent suicide risk. *See Sanville*, 266 F.3d at 738. If an inmate tells a prison guard "that he was suicidal, that alone should have been enough to impute awareness of a substantial risk of suicide." *Id*. at 737–38 (internal citation and quotation marks omitted). Here, Lindsey presents evidence that he informed Wallace about his suicidal thoughts and then took 19 pills in front of the cell camera. A reasonable jury could believe Lindsey and infer from these facts alone that Wallace recognized, but disregarded, a credible suicide threat. (This inference would be even stronger if the jury believes that Wallace intended to mock Lindsey, by saying that Lindsey was suicidal only "Because you're mad you didn't get your T.V.?" Dkt. 30, at 10 and Dkt. 32, ¶ 4.)

Wallace contends that he was not deliberately indifferent because he immediately notified Primmer and the PSU. Wallace relies on his own declaration in support. Dkt. 30, at 10, n.47 and Dkt. 44, ¶ 6. But as discussed in the fact section above, the sequence of events is disputed. Lindsey has adduced evidence that, if credited, would show that Wallace ignored Lindsey's first intercom call, told Lindsey that he would not call for help until after the count, and then called for help only after he saw Lindsey take the 19 pills on the cell camera. A reasonable jury could find from this evidence that Wallace was deliberately indifferent to Lindsey's suicide risk.

10

### 3. Qualified immunity

Wallace contends that he is entitled to qualified immunity because there was no clearly established federal law that prohibited "Wallace from alerting the supervising officer that Lindsey wanted to see him and giving Lindsey a heads up that he would have to wait until after the institution count." Dkt. 30, at 12. The law established long ago that a correctional officer cannot ignore an inmate's suicide risk and that he must take steps to ensure the inmate's safety. *See, e.g.*, *Sanville*, 266 F.3d at 740. Wallace notified his supervisor, but the record indicates that he did not report that it was an emergency even though he knew that Lindsey was suicidal. If Lindsey's version of the facts is proven, Wallace's action was unlawful under clearly established law.

I will deny Wallace's motion for summary judgment.

## B. Lindsey's motion for summary judgment

Lindsey moves for summary judgment on the same set of facts, and the parties raise the same issues and arguments. I need not repeat the same standards that apply here, except to note that in considering Lindsey's motion, I'll view the evidence and draw inferences in Wallace's favor. Two genuine issues of material fact preclude summary judgment for Lindsey: whether Wallace refused to get help by saying "I'm not calling anyone"; and whether Wallace immediately notified Primmer and the PSU. Based on the summary judgment evidence, particularly Wallace's declaration, a reasonable jury could believe that Wallace did not refuse to get help and instead immediately notified Primmer and the PSU, which would preclude a finding of deliberate indifference.

I will deny Lindsey's motion for summary judgment.

ORDER

IT IS ORDERED that:

1. Plaintiff Carlos Lindsey's motion for summary judgment, Dkt. 21, is DENIED.

2. Defendant Laverne Wallace's motion for summary judgment, Dkt. 29, is DENIED.

3. Plaintiff's motion to compel production of a copy of video evidence, Dkt. 42, is DENIED as moot.

Entered March 29, 2018.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge